IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

VELMA S. ELLIOTT                                                         PLAINTIFF

v.                                    No. 4:14–CV–251-BSM–BD

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                      DEFENDANT

## RECOMMENDED DISPOSITION

### Instructions

The following recommended disposition was prepared for Chief United States District Judge Brian S. Miller.  A party to this dispute may file written objections to this recommendation.  Objections must be specific and must state the factual and/or legal basis for the objection.  An objection to a factual finding must identify the finding and the evidence supporting the objection.  Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1]  The objecting party must serve the opposing party with a copy of an objection.  Failing to object within 14 days waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Miller may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

### Reasoning for Recommended Disposition

Velma S. Elliott seeks judicial review of the denial of her third application for social security disability benefits.[3]  Ms. Elliott last worked full-time as a baker for a restaurant.[4]  Before that, she worked as a cook and a cashier.[5]  According to Ms. Elliott, she stopped working because of bipolar disorder; depression; arthritis in the hands, right knee, and right hip; type II diabetes; and high blood pressure.[6]  She maintains she has been disabled since April 1, 2010.

**The Commissioner's decision**.  After considering Ms. Elliott's application, the Commissioner's ALJ determined that Ms. Elliott has severe impairments — degenerative joint disease in right knee status post meniscus tear and surgical repair, status post stress reaction of the pelvis, arthritis of the hands, degenerative disc disease of the lumbar spine, obesity, diabetes mellitus type II, hypertension, mild coronary artery disease, mood disorder, anxiety disorder, and personality disorder[7] — but she

---

[3]SSA record at pp. 136 & 145 (applying on May 23, 2011, and alleging disability beginning April 1, 2010) & pp. 152 & 170 (showing denial of applications filed on August 18, 2004 and November 21, 2006).

[4]*Id*. at p. 174.

[5]*Id*. at pp. 174 & 190.

[6]*Id*. at p. 173.

[7]*Id*. at p. 14.

could do some light work, to include her past work as a cashier.[8]  Because a person who

can do her past work is not disabled under social security law,[9] the ALJ denied the

application.[10]

 After the Commissioner's Appeals Council denied a request for review,[11] the

ALJ's decision became a final decision for judicial review.[12]  Ms. Elliott filed this case to

challenge the ALJ's decision.[13]  In reviewing the decision, the court must determine

whether substantial evidence supports the decision and whether the ALJ made a legal

---

[8]*Id*. at pp. 19 & 23.

[9]20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4) ("If you can still do your past relevant work, we will find that you are not disabled.").

[10]SSA record at p. 23.

[11]*Id*. at p. 1.

[12]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[13]Docket entry # 1.

error.[14]  This recommendation explains why substantial evidence supports the decision and why the ALJ made no legal error.

**Ms. Elliott's allegations**.  Ms. Elliott argues that substantial evidence does not support the ALJ's determination that she could do her past work as a cashier.[15]  She relies, in significant part, on her testimony about the requirements of her work as a cook at Waffle House.  According to Ms. Elliott, cashiering was a small part of her job. Ms. Elliott indirectly challenges the ALJ's determination about her ability to work; she suggests she cannot stand or walk long enough to work as a cashier.  She maintains that working as a cashier exceeds her capacity for interpersonal contact.

**Applicable legal principles**.  Ms. Elliott's argument implicates step four of the disability-determination process.  At step four, the ALJ  determines whether the claimant has the physical and mental ability to do her past work.[16]  If the claimant can do her past work, she is not entitled to disability benefits.  The claimant bears the

---

[14]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[15]Docket entry # 15.

[16]20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4).

burden of proving she can't do her past work.[17]  The court must determine whether Ms. Elliott met that burden.

The success of Ms. Elliott's argument depends on the ALJ's determination about her ability to work and the requirements for working as a cashier.  For substantial evidence to support the determination, a reasonable mind must accept the evidence as adequate to show Ms. Elliott could do some light work, including her past work as a cashier.[18]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[19]  The ALJ placed the following limitations on light work:

> (1) occasional stair-climbing, balancing, stooping, kneeling, crouching, and crawling;
>
> (2) no ladder climbing, extreme heat, work hazards;
>
> (3) no noisy environments; and
>
> (4) tasks learned and performed by rote, few variables, little judgment, few workplace changes, incidental interpersonal contact, and simple, direct, concrete supervision.[20]

---

[17]*Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992).

[18]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009).

[19]20 C.F.R. §§ 404.1567(b) & 416.967(b).

[20]SSA record at p. 19.

The ALJ's determination about Ms. Elliott's ability to work must be supported by medical evidence.[21]

**The medical evidence supports the ALJ's determination**.  Most of the medical evidence precedes the time period for which benefits were denied.  The remote medical evidence documents a 2003 right-knee surgery,[22] the onset of hypertension and type II

---

[21]42 U.S.C. § 423 (d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment…which could reasonably be expected to produce the pain or other symptoms alleged and which…would lead to a conclusion that the individual is under a disability"); 20 C.F.R. §§ 404.1508 & 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); 20 C.F.R. §§ 404.1529 & 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.").

[22]*See, e.g.*, SSA record at p. 259 (right knee surgery on July 17, 2003) & p. 244 (releasing Ms. Elliott for work on March 11, 2004 and diagnosing stress reaction pelvis).

diabetes,[23] past substance abuse,[24] and periodic mental health treatment.[25]  The remote evidence provided the bases for most of the impairments identified as severe.  The more probative evidence — the evidence generated during the time period for which benefits were denied — shows little impairment.

Physical impairment.  The agency physical examiner reported: (1) decreased range of motion in the shoulders, elbows, neck, and low back; (2) diminished grip in the left hand; and (3) an inability to squat to the floor and rise.[26]  Diagnostic imaging showed mild degenerative changes in the right knee.[27]  Imaging of the right hip showed no significant degenerative changes.[28]  When asked to assess Ms. Elliott's physical limitations, the examiner identified mild limitation in lifting, carrying, and squatting.[29] The descriptor "mild" suggests no disabling limitation.

---

[23]*See, e.g. id*. at pp. 277-79 (emergency room visit on Mar. 21, 2009 for neck pain; diagnoses: uncontrolled diabetes and muscle spasms).

[24]*See, e.g. id*. at pp. 318-19 (emergency room visit on Apr. 27, 2007; no blood pressure medication; positive for cocaine).

[25]*See, e.g., id*. pp. 450-52 (court-ordered mental health treatment flowing from child neglect proceeding).

[26]*Id*. at pp. 373-74.

[27]*Id*. at p. 377.

[28]*Id*. at p. 378.

[29]*Id*. at p. 375.

Subsequent treatment records show elevated blood sugar and elevated blood pressure.[30]  Physicians prescribed treatment to control those conditions.  The medical evidence shows blood sugar and blood pressure can be controlled with treatment.[31]  "If an impairment can be controlled by treatment or medication, it cannot be considered disabling."[32]

No medical evidence implicates an inability to occasionally lift 20 pounds or to frequently lift/carry 10 pounds in order to do light work.  No medical evidence suggests limitation in standing or walking.  The ALJ found that Ms. Elliott could perform a reduced range of light work, but medical experts opined that Ms. Elliott could do the full range of light work.[33]  A reasonable mind would accept the evidence as adequate to support the ALJ's determination about Ms. Elliott's physical ability to work.

Mental impairment.  During the mental diagnostic evaluation, Ms. Elliott endorsed every symptom the psychological examiner offered, including fictitious symptoms.[34]  The examiner thought Ms. Elliott might have a mood disorder, but found

---

[30]*Id*. at p. 516 (Aug. 3, 2012, elevated blood pressure and blood sugar).

[31]*Id*. at p. 278 (Mar. 31, 2009, out of medication for two weeks; her diabetes uncontrolled) & p. 514 (Nov. 30, 2012, blood pressure still elevated, but blood sugar is better).

[32]*Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (citation omitted).

[33]SSA record at pp. 392 & 444.

[34]*Id*. at p. 395.

8

it "impossible to diagnose" because of malingering.[35]  The examiner thought it likely

that Ms. Elliott could cope with the typical mental/cognitive demands of work-like tasks

and sustain concentration.[36]

A treating psychiatrist estimated Ms. Elliott's intellectual functioning as average

or a little below average.[37]  The psychiatrist identified obesity and uncontrolled diabetes

as the biggest factors affecting irritability and anger.[38]  According to Ms. Elliott, noise

triggers her symptoms.[39]  Treatment records indicate that Ms. Elliott's mental symptoms

responded to treatment.[40]

Mental health experts opined that Ms. Elliott could do unskilled work involving

tasks learned and performed by rote, few variables, little judgment, incidental

interpersonal contact, and simple, direct, concrete supervision.[41]  A reasonable mind

---

[35]*Id*.

[36]*Id*. at p. 396.

[37]*Id*. at p. 509.

[38]*Id*. at p. 505.

[39]*Id*. at pp. 61-62, 505 & 508.

[40]*Id*. at pp. 470 (fewer panic attacks with treatment), pp. 509-10 (taking anti-anxiety medication helps) & p. 518 (anti-depressant helped in the past).

[41]*Id*. at pp. 402 & 445.

would accept the evidence as adequate to support the ALJ's determination about Ms. Elliott's mental ability to work.

**The vocational evidence supports the ALJ's determination**.  The ALJ asked a vocational expert about work for a person with Ms. Elliott's limitations.[42]  The ALJ limited postural functions and excluded work hazards due to obesity and mild arthritis in the right knee.  The ALJ required unskilled work due to mental symptoms and excluded noisy environments that might trigger symptoms.

The vocational expert testified that a person with those limitations could work as a cashier.[43]  The vocational expert's testimony shows that Ms. Elliott could do her past work.  A person who can do her past work is not disabled under social security law.[44]

---

[42]*Id*. at pp. 63-64.

[43]*Id*.

[44]20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4) ("If you can still do your past relevant work, we will find that you are not disabled.").

The testimony about working at Waffle House[45] provides no basis for relief because Ms. Elliott twice worked as a cashier after working at Waffle House.[46] Ms. Elliott's complaint about the frequency of interpersonal contact provides no basis for relief because the ALJ did limit the frequency of contact. Instead, the ALJ required incidental interpersonal contact; that is, interpersonal contact that occurs as the consequence of job duties — here, duties like operating a cash register, receiving cash from customers, and making change. Regardless of how frequent a cashier performs such tasks, interpersonal contact occurs as a consequence of the tasks.

---

[45]The testimony consisted of the following colloquy:

ALJ:        All right. And what were you doing at the Waffle House?

Ms. Elliott:  I worked the grill.

ALJ:        Okay. Anything else?

Ms. Elliott:  I waitressed a little bit. And like when the new employees come in I used to show them what to do as far as calling out orders and stuff.

ALJ:        Did you run the cash register?

Ms. Elliott:  Yes, ma'am.

SSA record at p. 43.

[46]*Id*. at pp. 174 & 190.

11

**Conclusion and Recommendation**

Substantial evidence supports the ALJ's decision.  Ms. Elliott did not prove that working as a cashier exceeded her ability to work.  The ALJ made no legal error.  For these reasons, the undersigned magistrate judge recommends DENYING Ms. Elliott's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

Dated this 10th day of February, 2015.

_____

UNITED STATES MAGISTRATE JUDGE